IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-cv-00125-FL

| | |
|---|---|
| **Willie Daniel Richardson, Jr.,** Plaintiff, v. **Carolyn Colvin**, Acting Commissioner of Social Security, Defendant. | **Memorandum & Recommendation** |

Plaintiff Willie Daniel Richardson, Jr. instituted this action on July 18, 2014, to challenge the denial of his application for social security income. Richardson claims that Administrative Law Judge ("ALJ") Katherine D. Wisz erred in (1) her determination that Richardson had the Residual Functional Capacity ("RFC") to perform light work, and (2) her determination that Richardson's statements concerning the intensity, persistence, and limiting effects of his pain were not credible. Both Richardson and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 22, 24.

After reviewing the parties' arguments, the court finds that ALJ Wisz reached the appropriate decision. There is substantial evidence to find that ALJ Wisz did not err in her determination that Richardson has the physical and mental RFC to perform light work or in her determination that his subjective statements regarding his pain were not credible enough to find

him disabled. Therefore, the undersigned magistrate judge recommends[1] that Richardson's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

I.      BACKGROUND

On May 11, 2010, Richardson filed an application for supplemental security income benefits on the basis of a disability that allegedly began on September 12, 2009. After his claim was denied at both the initial stage and upon reconsideration, Richardson appeared before ALJ Wisz for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Wisz determined that Richardson was not entitled to benefits because he was not disabled. Tr. at 14–22.

ALJ Wisz determined that Richardson has not engaged in substantial gainful activity since May 11, 2010, and that he has the severe impairments of acute myocardial infarction, degenerative disc disease, affective disorders, and fibromyalgia. Tr. at 14. ALJ Wisz found that his impairments, alone or in combination, do not meet or equal a listing impairment. *Id.* She also found that Richardson has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with these limitations: he can only tolerate occasional exposure to hazards; he can understand, remember, and carry out simple instructions, and sustain attention for simple tasks; he can occasionally interact with coworkers and supervisors; and he can adjust gradually to changes in the work setting. *Id.* at 15. She determined that Richardson is unable to perform any past relevant work as an assembly technician and set-up mechanic, (*id.* at 20), but that, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. *Id.* at 21. These include mail clerk, warehouse

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

checker, and laundry folder. *Id.* Thus, ALJ Wisz found that Richardson is not disabled. *Id.* After unsuccessfully seeking review by the Appeals Council, Richardson commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on July 18, 2014. D.E. 5.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the

3

claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

Doctors have diagnosed Richardson with several conditions, including acute myocardial infarction, coronary artery disease, degenerative disc disease, and depression and anxiety. On September 9, 2009, Richardson was admitted to Nash General Hospital where he was diagnosed with acute myocardial infarction and 70% lesion of the left anterior descending coronary artery. Tr. at 281, 284–85. Richardson underwent a stenting procedure on September 15, 2009 at Pitt County Memorial Hospital to treat his coronary artery disease. *Id.* at 284–85.

During a psychiatric evaluation performed on September 9, 2009, Richardson discussed multiple stressors related to his unemployment and financial problems; he also admitted to poor sleep and appetite. *Id.* at 305. Dr. Kathleen Seibel diagnosed Richardson with depression, anxiety, and alcohol and drug abuse, for which she prescribed Zoloft and substance abuse counseling. *Id.* at 325–30.

In late September, Dr. Keith Tucci evaluated Richardson for complaints of spinal discomfort. *Id.* at 347–48. Richardson had full range of motion in his neck, tenderness without radiating symptoms, normal tone and bulk, good reflexes, stable gait, and negative spinal CT scan. *Id.* Dr. Tucci found that there was no need for neurosurgical intervention and

4

Case 4:14-cv-00125-FL   Document 26   Filed 08/11/15   Page 4 of 15

recommended conservative care continuation. *Id.* Richardson visited Carolina Behavioral Care on November 17, 2009. *Id.* at 369. Dr. Joshua Dittmer diagnosed Richardson with depression and prescribed Celexa as treatment. *Id.* at 372–73. Other than his depression, Dr. Dittmer found that Richardson's mental status was normal. *Id.* at 361, 365.

On December 17, 2009, Dr. Maqsood Ahmed of the North Carolina Department of Health and Human Services Disability Determination Services noted a recent history of myocardial infarction, but stated that Richardson was doing well and that his hypertension was under control. Tr. at 355–59. In April 2010, Richardson was referred to Dr. Gaurav Lakhanpal to follow-up on his ongoing treatment for coronary heart disease. *Id.* at 386. He told Dr. Lakhanpal that he had no chest pain, dizziness, nausea, vomiting, palpitations, or syncope. *Id.* Dr. Lakhanpal also noted that Richardson engaged in regular physical activity. *Id.* On later visits in August 2010 and January 2011, Dr. Lakhanpal noted that Richardson was pain free, asymptomatic with no cardiac abnormalities, and had returned to baseline activity.. *Id.* at 543–44, 635.

In July 2010, Dr. Dittmer conducted a mental examination where he determined that Richardson was fully oriented while exhibiting normal concentration, language, memory, judgment, and knowledge. *Id.* at 492–93, 495–96. Richardson also visited North Carolina Orthopedics on July 29, 2010, complaining of pain in his mid and lower back. *Id.* at 450. X-rays revealed degenerative disc changes and increased thoracic kyphosis. *Id.* The orthopedist referred Richardson to physical therapy for core conditioning and strengthening. *Id.*

Dr. John Moss conducted an MRI in May 2011 and found that Richardson's thoracic spine was otherwise normal and that the etiology of his pain could not be determined. *Id.* at 572, 581. Dr. Moss again referred Richardson to physical therapy for core strengthening. *Id.* At an

appointment in October 2011, Richardson reported to Dr. Moss that he was "doing fair" and that heat and massage treatment relieved his back pain symptoms. *Id.* at 571.

On October 28, 2011, Richardson complained to Dr. R. Prasad Degala of depression characterized by insomnia, irritability, and mood swings. *Id.* at 628–29. Dr. Degala found no clinical evidence of major depressive or thought disorder, but he diagnosed Richardson with bi-polar disorder and prescribed Celexa and Lorazepam. *Id.* On November 21, 2011, Richardson again suggested to Dr. Degala that he was depressed and uncomfortable around large groups of people. *Id.* at 627. Dr. Degala increased Richardson's Celexa dosage and recommended counseling. *Id.*

Dr. Joey Thomas evaluated Richardson for back pain in November 2011 and found restricted range of Richardson's spine from side to side. *Id.* at 648–49. He recommended aquatic therapy and daily walks. *Id.* Dr. Thomas also noted that Richardson was not a candidate for surgical treatment. *Id.* In a follow-up with Dr. Thomas on January 30, 2012, Dr. Thomas indicated that Richardson should not do any work that would cause or increase his back pain. *Id.* at 643–46. On August 17, 2012, Richardson complained to Dr. Divya Patel of Carolina Regional Orthopedics of neck, mid-back, and lower-back pain over the course of several years. *Id.* at 744–46. At this appointment, Richardson demonstrated the ability to follow one and two-step commands, independent ambulation, and independent squatting and standing. *Id.* Dr. Patel diagnosed Richardson with acute neck and back pain and recommended a TENS unit and physical or aquatic therapy. *Id.* Richardson reported between September 2011 and September 2012 that medication helped his neck and back pain. *Id.* at 737.

In a November 2011 follow-up appointment for Richardson's cardiovascular injuries, Dr. Lakhanpal noted that Richardson remained pain-free and asymptomatic, while an

6

echocardiogram demonstrated normal left ventricle function. *Id.* at 729, 733. Richardson independently performed the following tasks: personal hygiene tasks, meal preparation, washed and ironed laundry, drove without assistance, shopped for food and clothing, cared for elderly grandparents, and socialized with others. *Id.* at 230–35.

Following ALJ Wisz's decision, physician assistant Laura Medlin, PA-C, found that Richardson continued to follow one and two-step commands consistently. *Id.* at 766. Dr. Degala saw Richardson several times between March 2012 and September 2013 during which Richardson complained of depression, trouble sleeping, mood swings, and crying spells. *Id.* at 781–83. However, mental examinations demonstrated that Richardson was alert, coherent, and oriented, with no thoughts of suicide, hallucinations, or delusional thinking. *Id.* at 771–78, 781–83. In November of 2012, Richardson reported to Dr. Degala that he felt well. *Id.* at 773. In May, July, and September 2013, Richardson denied having problems, including depression or mood swings. *Id.* at 771–72.

Dr. E. Woods evaluation of the records determined the Richardson could occasionally lift or carry 50 lbs., frequently lift or carry 25 lbs., stand or walk about six hours in an eight hour work day, and sit about six hours in an eight hour work day. *Id.* at 68–69. Dr. Rudy Warren also evaluated the records in January 2011 and determined that Richardson could understand and remember simple instructions, sustain the performance of two-step commands involving simple instructions on an ongoing basis for two hours at a time, work at an adequate pace in tasks not requiring public contact or extensive interaction with others, and adapt to routine changes in a stable, low-stress work environment. *Id.* at 69–70. At the administrative hearing, the vocational expert testified that a person with Richardson's vocational characteristics could not do Richardson's prior work as an assembly technician or set-up mechanic, but that person could

7

work as a warehouse checker, mail clerk, or laundry folder, which are occupations existing in significant numbers in North Carolina and the United States generally. *Id.* at 57-59.

### D. Finding of RFC to Perform Light Work

#### 1. *Physical Capacity*

Richardson's first claim is that ALJ Wisz erred by determining that he has the physical RFC to perform light work. D.E. 23 at 7. To support his claim, Richardson refers to Dr. Thomas's notes that he should not do any work that "would cause or increase his back pain," claiming that the lifting, standing, and walking involved in light work precludes him from engaging in light work. Tr. at 643–46. Richardson also cites to his complaints of neck and back pain for several years and Dr. Patel's recommendation of a TENS unit as well as physical or aquatic therapy to manage his pain. *Id.* at 744–46. He further cites the evidence of multi-level degenerative disc changes and his "constant and severe" back pain. D.E. 23 at 8–9.

ALJ Wisz did not err by finding that Richardson had the physical ability to perform light work because there is substantial evidence in the record supporting her determination. *Shively*, 739 F.2d at 989. Richardson's claim is based on his myocardial infarction and stent placement in September 2009. Tr. at 19. By December of 2009, Dr. Ahmed reported that despite a recent myocardial infarction, Richardson was doing well and his blood pressure was under control. *Id.* at 355–59. Further, Dr. Lakhanpal, Richardson's cardiologist, noted in January 2011 that he had returned to his baseline level of activity, was doing "very well," and reported no symptoms of chest pain. *Id.* at 543. In August 2011, August 2012, and November 2012, Richardson's medical records show that he was pain free and asymptomatic with normal left ventricle systolic function. *Id.* at 635, 718, 728.

8

Despite multiple appointments from 2009 through 2012 to address Richardson's long history musculoskeletal and back pain, the cause of his pain remained unclear. *Id.* at 572. X-ray examinations in July 2010 showed a normal neuromotor examination and no significant abnormality of Richardson's spine, other than degenerative changes and increased thoracic kyphosis. *Id.* at 433–36. Dr. Thomas found some restricted range of motion of Richardson's spine from side to side, but normal range motion of the shoulder joints, and normal muscle strength. *Id.* at 648–49. He later advised him not to do any work that would cause or increase his back pain. *Id.* at 645. Multiple tests in 2012 revealed reduced range of motion, but also found that Richardson could squat, stand, and ambulate "without any significant difficulty." *Id.* at 745.

This evidence suggests that Richardson has dealt with musculoskeletal pain for years. However, it is not the role of this court to determine whether Richardson has the RFC to perform light work; instead, the role of the court is to determine whether there is substantial evidence to support ALJ Wisz's findings. *Shively*, 739 F.2d at 989. Based on the record, Richardson has fully recovered from his myocardial infarction and stenting procedure and is now asymptomatic. His musculoskeletal pain, on which his present argument heavily relies, was mild and treated conservatively. Tr. at 19. Additionally, Richardson reported that portions of his conservative treatment plan, including heat and massage treatment, helped alleviate the pain. *Id.* at 571. Notably, not one physician recommended surgical intervention to address his back pain. Symptoms that can be reasonably treated in this manner are typically not disabling. *See*, *e.g.*, *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The fact that no surgical treatment was warranted and that his pain was treated conservatively indicate that his pain was as limiting as Richardson alleges.

Richardson notes that Dr. Thomas advised him to avoid work that may increase or cause back pain. However, a physician's memorialization of a patient's complaints of pain does not equate to a medical opinion. *Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996). Further, the instructions by Dr. Thomas fail to identify the specific limitations involved. Moreover, Dr. Thomas prescribed conservative treatment, which lends little support to Richardson's claims of debilitating pain. In fact, in light of Dr. Thomas's recommendation, ALJ Wisz rejected the State agency physicians' assessment that Richardson could tolerate medium work. Tr. at 19. Finally, the record shows that Richardson cares for his young daughter, works part-time from time to time, drives without restrictions or assistance, cares for his elderly grandmother and grandfather, cooks, shops for clothes and food, and does laundry and ironing. *Id.* Based on this evidence, ALJ Wisz had substantial evidence to support her conclusion that Richardson has the physical RFC to perform light work.

    2.    *Mental Capacity*

Richardson's second claim is that his "severe mental impairment" precludes him from performing unskilled sedentary work and that ALJ Wisz did not properly analyze Richardson's ability to perform tasks in S.S.R. 96-9p. D.E. 23 at 9–10. To support this contention, Richardson cites his diagnoses of depression and anxiety. *Id.* Richardson received mental health counseling for several years as a result of his depression and stressors related to his unemployment and financial difficulties. *Id.* at 305. In addition to his depression and anxiety, Richardson has complained of insomnia, lack of an appetite, mood swings, and discomfort around groups of people. *Id.* at 627–629. Richardson states that he is incapable of performing the essential mental elements of unskilled work under S.S.R. 96-9p, which include understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding

10

appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. D.E. 23 at 9.

Richardson fails to specify how ALJ Wisz erred in her analysis of S.S.R. 96-9p as it applies to his ability to perform light work. ALJ Wisz notes that Richardson's impairment "causes mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation of extended duration." Tr. at 15. Despite Richardson's impairment, the record shows that he demonstrated normal attention, stable speech, good memory and judgment, and no thought disturbances. *Id.* at 492-93, 495-96. Further, the State agency physicians' assessment found that Richardson is capable of carrying out simple instructions and interacting with coworkers in a low-stress, minimally social position. *Id.* Thus, there is substantial evidence to support ALJ Wisz's findings. Further, the role of this court is not to "re-weigh conflicting evidence" in the record. *Johnson,* 434 F.3d at 653. Inasmuch as Richardson has failed to assert grounds on which ALJ Wisz's determination is incorrect, Richardson's contention should be dismissed.

### C. Credibility Findings

Richardson also argues that ALJ Wisz misapplied Fourth Circuit precedent by dismissing his subjective evaluation of his pain and ability to perform work. Based on the record and prevailing law, ALJ Wisz did not err in her credibility findings because she properly weighed Richardson's subjective complaints with the objective evidence in the record.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the

intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig*, 76 F.3d at 592-93. However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. S.S.R. 96-97, 1996 WL 374186, at *6. Moreover, the ALJ *must* consider it in evaluating the individual's statements. *Id.*

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley v. Colvin*, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In addition to the objective medical evidence, the ALJ may consider the claimant's daily activities. 20 C.F.R. § 416.929(c)(3)(i); *see also Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities such as performing home exercises, taking care of family pets, cooking, and doing laundry, were inconsistent with claimant's complaints of excruciating pain and inability to perform basic physical and mental work activities). Upon review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984).

Richardson claims that "objective evidence is not required to show that pain can be so intense that it prevents an individual from completing a full workday." D.E. 23 at 10, *citing Hines v. Barnhart*, 453 F.3d 559, 563-64 (4th Cir. 2006). Richardson cites the following evidence in support of his physical pain: he limits activities around the house because of drowsiness from medications and shortness of breath; his son helps him with chores; he has

extreme back pain; he lies down for three to four hours per day to relieve back pain; and he can only stand for 15 minutes at a time and sit for 35 minutes at a time. D.E. 23 at 11; Tr. at 48–49. He also states that he suffers from crying spells, difficulty with concentration, and difficulty being around people. D.E. 23 at 11; Tr. at 53–55. Finally, Richardson points to the vocational expert's response to his hypothetical question that an individual with the physical and mental limitations outlined in Richardson's testimony would be precluded from work. D.E. 23 at 12; Tr. at 59. Richardson's claims are unconvincing because the objective record is inconsistent with his subjective claims of debilitating pain.

Richardson relies on *Hines* to support his contention that his subjective statements were improperly dismissed by ALJ Wisz. Richardson is correct that ALJ Wisz may not ignore subjective descriptions of pain simply because the record does not provide objective evidence supporting his description of the pain. *Hines*, 453 F.3d at 565 (stating that "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity"). However, "*Hines* does not stand for the proposition that a claimant may rest solely on his subjective descriptions of pain when objective evidence in the record does not support such descriptions." *Cannon v. Astrue*, No. 4:10-cv-177-FL, 2011 WL 6842990, at *4 (E.D.N.C. Dec. 29, 2011). Thus, Richardson's allegations of pain "need not be accepted to the extent that they are inconsistent with the available evidence." *Hines*, F.3d at 565 n.3.

The evidence Richardson relies on does not overcome the great deference given to ALJ Wisz's credibility determinations. As ALJ Wisz noted, Richardson's mental and physical conditions were mild to moderate and the treatment he received has been routine and conservative. Tr. at 15–20. ALJ Wisz accounted for Richardson's mental difficulties with

13

concentration and stress around groups of people through a limitation to only occasional interactions with coworkers and supervisors and a restriction that Richardson be allowed to adjust gradually to work setting changes. *Id.* at 15. Richardson maintained daily activities such as driving, caring for his young daughter, preparing meals, housework, shopping, and caring for his elderly grandparents, activities that are inconsistent with his claim that he suffers from too much pain to perform light work. *Id.* at 51–52, 56, 230–32

Further, ALJ Wisz was not required to consider the vocational expert's response to a hypothetical question that did not reflect the RFC determination but instead was based on Richardson's subjective statements regarding his ability to work. *Walker v. Brown*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that a vocational expert's testimony must be based on a proper hypothetical containing limitations based on the evidence of record to be proper); *see also Lee v. Sullivan*, 945 F.2d 687, 692 (4th Cir. 1991) (holding that a vocational expert's testimony was invalid as it did not find support in the record). Because the record contains evidence inconsistent with Richardson's claims of debilitating pain, ALJ Wisz did not err by refusing to give great credence to the vocational expert's response to the flawed hypothetical question. In light of the objective evidence in the record, ALJ Wisz had substantial evidence on which to base her finding that Richardson's claims of debilitating pain are not credible enough to find him disabled. Therefore, the ALJ's determination on this issue should be affirmed.

## III. CONCLUSION

For the forgoing reasons, the undersigned recommends that Richardson's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

14

Case 4:14-cv-00125-FL   Document 26   Filed 08/11/15   Page 14 of 15

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 11, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE